IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARKEL AMERICAN INSURANCE
COMPANY,

        OPINION AND ORDER

    Plaintiff-Counterclaim Defendant,

        09-cv-226-bbc

    v.

FRED BACHMANN,

    Defendant-Counterclaim-Plaintiff,

    v.

MURPHY INSURANCE SERVICES, INC.,

    Third Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    This is an action for declaratory judgment growing out of an accident that effectively destroyed a high performance boat owned by defendant Fred Bachmann. Defendant Bachmann filed a claim with the boat's insurer, plaintiff Markel American Insurance Company, but the claim was denied after plaintiff determined that neither defendant nor his wife was operating the boat at the time of the accident, in contravention of the Named Operator endorsement attached to the policy. When defendant objected, plaintiff filed this

1

action, seeking an order from the court declaring that the insurance policy was suspended at the time of the accident because defendant was in violation of the terms of the policy. Jurisdiction is present under 28 U.S.C. § 1331(1) because the action is a suit for a declaration of rights under the terms of a policy of marine insurance. Continental Casualty Co. v. Anderson Excavating & Wrecking Co., 189 F.3d 512, 517 (7th Cir. 1999).

Defendant has filed counterclaims against plaintiff, raising many different issues he categorizes as either justifying reformation of the insurance contract or amounting to breach of contract or bad faith. He has also sued third party defendant Murphy Insurance Services, Inc., alleging many of the same claims he asserts against plaintiff.

The case is before the court on plaintiff's motion for summary judgment against both defendant Bachmann and third party defendant Murphy. Plaintiff contends that the undisputed facts support its position that defendant Bachmann knew about the Named Operator condition in the endorsement, either because he received a copy of it or because the insurance brokers acting as his agents were in possession of the documents and fully aware of the condition, in which case their knowledge was imputed to defendant. Plaintiff contends that summary judgment is warranted against third party defendant Murphy because the only claim this defendant is asserting against plaintiff is for contribution.

I conclude from the undisputed facts that plaintiff has shown that third party defendant Murphy was not its agent, but was defendant's agent and that because Murphy

2

received a copy of the 2005-06 policy and its endorsements, defendant Bachmann is charged with knowledge of the contents of these documents. Whether defendant is charged with knowledge of the documents from the succeeding years (2006-08) remains disputed because plaintiff has not shown that Murphy received those documents, that another broker acting as defendant's agent at the time received them or that defendant himself did. I conclude that because plaintiff has shown that third party defendant Murphy was not its agent, Murphy has no basis for any claim against plaintiff for contribution or indemnification.

For the purpose of deciding the motion, I find that the following facts proposed by plaintiff are both material and undisputed. In finding undisputed certain proposed facts relating to the issue of agency, I did not place any weight on defendant's objections to those proposed facts that were based merely on his assertion that the issue was one of law. Defendant is correct that a determination of agency *is* a matter of law, but like all matters of law, it is based upon facts. To put the proposed fact into dispute, defendant had to propose facts that would tend to show why it was not true and correct. Asserting only that the overriding question is one of law does not do the trick.

## UNDISPUTED FACTS

Plaintiff Markel American Insurance Company is an insurance company licensed to do business in the state of Virginia, with its principal place of business in Wisconsin.

3

Defendant Fred Bachmann is a Wisconsin resident. Third-party defendant Murphy Insurance Services, Inc. is an insurance company authorized to do business in Wisconsin. The boat that is the subject of the litigation was purchased by defendant on May 6, 2000, for $151,920.

In March 2005, defendant sought to obtain a new insurance policy for his boat. He called Murphy, which had provided insurance policies for his companies in the past. When defendant asked Murphy to find insurance for his boat, defendant did not negotiate or agree to pay a fee to Murphy. Plaintiff made all of its requests of defendant through Murphy.

At all times, Murphy was a retail broker, having direct contact with defendant and seeking assistance from wholesale brokers such as Midwest General Agency. Although Murphy has contracts with at least 14 different insurance companies authorizing it to issue Personal Lines Boat or Watercraft Insurance Policies or both, it has never had such a contract with plaintiff or otherwise been authorized to bind plaintiff or act for it in any capacity.

Murphy's representative, Christen Nygren, sought out "surplus lines" insurance for defendant after finding out that no standard carrier was willing to insure defendant's boat both because of the size and speed of the boat and defendant's prior driving record. Someone from Murphy talked with Teri Goulet at Midwest General Agency about assistance in obtaining a quotation; Goulet talked to First Marine Underwriters, which obtained a

4

quote that was passed on to Murphy. Midwest had no authority to take any act on behalf of plaintiff other than to approach plaintiff's managing agent and seek a quote from it. Only the managing agent, First Marine, was authorized to bind plaintiff.

The quote from First Marine was conditioned on the issuance of the policy under plaintiff's high performance boat program, with a named operator endorsement. The quote from First Marine read: "Also note that our HP program has a named operator clause." In addition, the words "NAMED OPERATOR ENDORSEMENT MAY APPLY" appeared next to the words "OPERATOR INFORMATION" on the front page of the application form signed by defendant on June 9, 2005. Murphy submitted this form to Midwest for submission to First Marine.

Persons wishing to insure their boats under plaintiff's high performance boat program must submit drivers' license information for named operators, so that plaintiff may investigate the driving records of the proposed operators, as well as details about prior boats owned and operated. The premiums for insurance will vary depending on the driving records and experience in the operation of high performance boats. In defendant's case, the premium first quoted for the insurance was revised upward after discovery of his past traffic violations.

Plaintiff does not issue policies of marine insurance for high performance boats without including an endorsement limiting coverage to incidents in which a named operator

5

is at the helm, solely in control and exclusively operating all aspects of steering and throttle of the insured boat. When defendant's policy, RP2006972, issued, it included a named operator endorsement. Third party defendant Murphy received the declarations page and named operator endorsement covering the time period from June 16, 2005 through June 16, 2006.

On June 10, 2005, third party defendant Murphy paid Midwest $1,056 as an initial premium payment on defendant's policy. On June 13, 2005, defendant paid Murphy $1,056.

Endorsement 5037-0405 for the year 2005-06 was in the possession of both Murphy and Midwest. It provided that "The Named Operator(s) listed on the Declarations Page shall be at the helm, solely in control, and exclusively operating all aspects of steering and throttle of the Insured Property. If you violate this restriction, the coverage shall be suspended until You are no longer in violation of this restriction. We shall not cover losses because You violated this restriction." The Declarations Page for the policy listed "Fred and Kiya Bachmann" as the named operators and it listed the applicable endorsements as including WC5037-0405.

Defendant renewed the policy for the period June 16, 2006 through June 16, 2007 and June 16, 2007 through June 16, 2008. Both policies contain Declarations Pages showing the named operators as Fred and Kiya Bachmann and the applicable endorsements

6

as including WC5037-0405. These policies were in the possession of Midwest; Murphy denies ever having received copies of them.

Starting with the first policy that plaintiff issued to defendant and continuing with each renewed policy, it was plaintiff's responsibility to send out to the wholesale broker that had sought the insurance from plaintiff's agent, First Marine, the Declarations Pages, the policy language and any and all applicable endorsements, including any new or revised endorsements. It was the responsibility of the wholesale brokers to make sure that the materials were delivered to defendant and that he was made aware of the provisions of the policy.

Following the renewal of the policy in June 2007, responsibility for defendant's file was transferred from Midwest to a sister company, First Western Insurance, after the parent company, R.W. Scobie Corporation, consolidated all personal lines policy handling at First Western. However, the Declarations Page for defendant's policy, effective June 16, 2008, still identifies Midwest as the "Broker/Producer" of the policy. First Western views Murphy as a "subproducer" from which it solicits insurance business, seeking to place its clients with First Western's markets. Dep. of Tom Berry, dkt. #111, at 14.

Like Midwest, First Western had no authority to act for or on behalf of First Marine or plaintiff. It could solicit a quote from plaintiff only through First Marine. First Western's file contains copies of the Declarations Page for the renewal of policy no. RP2006972 issued

7

to defendant for June 16, 2007-June 16, 2008 and for the period June 16, 2008-June 16, 2009. The Declarations Page of the 2008-09 policy listed the applicable endorsements, which included WC5103-0207, setting forth the same terms as Endorsement WC5037-0405. It is not known when First Western received the copies of the Declarations Pages.

On or about July 24, 2008, the insured boat was involved in an accident and rendered a total loss. Neither defendant nor his wife was operating the boat at the time of the accident. On October 16, 2008, plaintiff wrote to tell defendant that it was plaintiff's position that the policy issued to defendant was not in effect at the time of the accident because the boat was being operated in violation of the named operator endorsement.

OPINION

In asking for summary judgment, plaintiff says that it is willing to concede that defendant Bachmann did not receive any copy of the insurance policy and endorsements, much as it disputes the truth of defendant's averment to that effect. Plaintiff rests its motion for summary judgment on its argument that, under Wisconsin law, the knowledge of the intermediate brokers, First Western, Midwest and third party defendant Murphy is imputed to defendant, so that if any of these entities knew of the applicable Named Operator endorsement to defendant's policy, defendant would be held to have known of it also. This argument can succeed only if plaintiff is correct about the way in which

8

Wisconsin law treats intermediate brokers.

Since 1975, Wisconsin has defined "insurance marketing intermediaries" as any person who does any of the following (or assists others in doing the following): "(1) Solicits, negotiates or places insurance or annuities on behalf of an insurer or person seeking insurance or annuities; or (2) Advises other persons about insurance needs and coverages." Wis. Stat. § 628.02 (1). The statute distinguishes among intermediaries. For instance, "[a]n intermediary is an insurance broker if the intermediary acts in the procuring of insurance on behalf of an applicant for insurance or an insured, and does not act on behalf of the insurer except by collecting premiums or performing other ministerial acts," § 628.02(3), whereas "[a]n intermediary is an insurance agent if the intermediary acts as an intermediary other than as a broker." § 628.02(4). In general, an insurance agent is the agent of an insurer; an insurance broker is the agent of an insured, although the terms vary in some states. According to Eric Mill Holmes, 7 Holmes' Appleman on Insurance 2d, § 44.2 (1998), the test of an agent (who acts for the insured) is whether he or she has the power to bind the insurer in at least one of the following ways:

> (1) to create rights and duties for an insurer through an insurance contract formed by the agent with an applicant for insurance, or
> (2) to issue insurance policies on the agent's own initiative, or
> (3) to accept insurable risks binding on the insurer.

See also Brown v. Sandeen Agency, Inc., 316 Wis. 2d 253, 762 N.W.2d 850 (Ct. App.

9

2009) (holding that defendant agency did not act as agent for insurance company, where agency's employee prepared application to submit to pool of insurers and pool assigned insurance company from list of participants and evidence did not show that employee or agency was employed by insurer); General Star Indemnity Co. v. Bankruptcy Estate of Lake Geneva Sugar Shack, Inc., 215 Wis. 2d 104, 130, 72 N.W.2d 881, 893 (Ct. App. 1997) (finding that entity was agent for insurer when insurer's agent gave entity authorization to bind coverage for insurer).

Courts in other states have reached similar conclusions under their state's law. E.g., Essex Insurance Co. v. Zota, 985 So. 2d 1036 (Fla. 2008) (in determining that delivery of policy to general lines insurance agent acting on behalf of construction company constituted delivery of policy to company, court relied on findings that insurance agent was acting as broker when it went to surplus lines market on company's behalf after it could not obtain commercial general lines policy and agent did not have contract or agreement with surplus lines insurer to market or sell its products); Dreiling v. Maciuszek, 780 F. Supp. 535 (N.D. Ill. 1991) (holding that independent insurance agent was acting as agent for insured and not for insurer; he was approached by insured and sought out three competitive bids from insurance companies; accordingly, information disclosed to him could not be attributed to insurer).

Defendants have cited a number of cases for the opposite conclusion, but all of them

predate the 1975 enactment of § 628.02.  In Gilbert v. U.S. Fire Insurance Co., 49 Wis. 2d 193, 181 N.W.2d 527 (1970), for example, the Wisconsin Supreme Court held that an independent insurance broker's mistake was attributable to the insurer under Wis. Stat. § 209.047.  In Trible v. Tower Ins. Co., 43 Wis. 2d 172, 168 N.W.2d 148 (1969), the same court held that once an insurance company accepts an insurance application from an independent agent, it is not permitted to deny that the insurance company was acting as its agent in taking the application.  At the time these cases were decided, Wis. Stat. § 209.047 provided that "[e]very person who solicits, negotiates or effects insurance of any kind . . . on behalf of any insurance company . . . or person desiring insurance, or transmits an application for a policy of insurance or an annuity contract, other than for himself . . . shall be held to be an agent of such insurer to all intents and purposes, unless it can be shown that he receives no compensation for his services."

Under Wisconsin law and the undisputed facts, third party defendant Murphy cannot be considered to have been plaintiff's agent during the negotiation for the insurance or for any other purpose.  Murphy was an independent broker representing defendant in trying to find an insurer for his high performance boat.  Thus, its knowledge of the terms of the initial policy (2005-06), its declarations and endorsements is imputed to defendant.

Because third party defendant Murphy never acted as plaintiff's agent in connection with the insurance policy issued to defendant, I can imagine no set of circumstances in which

11

it could be held liable for plaintiff's acts or omissions. Therefore, I will motion to dismiss Murphy's cross-claim against plaintiff.

Plaintiff is seeking *complete* summary judgment, but it has proved only that third party defendant Murphy was defendant's agent at the time defendant obtained its original policy, which Murphy received. The terms and conditions of the 2005-06 policy are therefore imputed to defendant. As to the subsequent renewals of the policy, it is unclear whether any one was acting as defendant's agent. Even if Midwest is found to have been acting as defendant's agent in 2008, the record does not show that it received a copy of the policy and endorsements before the accident occurred. (It appears that it had the copy as of October 2008.)

It is undisputed at this stage that third party defendant Murphy did not receive copies of the renewal policies with their endorsements for the years 2006-07, 2007-.08 and 2008-09 and plaintiff has conceded for the purpose of this motion that defendant did not receive any copies of the policies or the endorsements. Defendant paid premiums directly to plaintiff. Whether any other broker was acting as defendant's agent in those years is a question of fact, Holmes' Appleman on Insurance § 47.9, that cannot be answered on the present record. As a general rule, however, the authority of a broker employed to procure insurance ceases upon procuring the insurance and delivery of the policy. Id.

This is not the only open issue. Defendant has alleged that the Named Operator

12

endorsement is invalid as against him because plaintiff failed to obtain the approval of Wisconsin's Office of the Commission of Insurance, as it must do under Wis. Stat. § 631.20. Defendant never referred to this allegation in his brief in opposition to plaintiff's motion for summary judgment, but I cannot assume that he has abandoned it.

In its reply brief, plaintiff attempts to dispose of this issue by citing this court's ruling on September 18, 2009 to the effect that if plaintiff could prove that defendant had received the endorsements and declarations, it would be unnecessary to resolve the question of the applicability of Wis. Stat. § 631.20. Order, dkt. #54, at 12. That ruling addressed a different question. Section 631.13 provides that "[n]o insurance contract may contain any agreement or incorporate any provision not fully set forth in the policy or in an application or other document attached to and made a part of the policy at the time of its delivery," but by operation of §§ 631.20(1) and 630.01(3), it does not apply to sellers of ocean marine insurance. Defendant had argued that plaintiff had never obtained the permission of the insurance commissioner to change its policy from inland marine to ocean marine. Plaintiff argues that approval was not necessary, when the policy was clearly one of ocean marine. The parties did not supply enough information to allow a resolution of the dispute, but I noted that no decision would be necessary if plaintiff could prove that defendant has in fact received the endorsements.

It is possible that this ruling misled plaintiff into thinking not just that it could avoid

13

having to prove compliance with § 631.13, covering delivery of documents, but that it could also avoid proving compliance with § 631.20(1) as it related to the endorsements it added to defendant's policy. If so, I regret the misunderstanding. The issue will require further evidence and argument before it can be decided. The February 27, 2009 letter from the Office of the Commissioner of Insurance. Def.'s Ans., dkt. #2, exh. A, suggests that plaintiff has never submitted the declarations at issue for approval by the commissioner. If so, that oversight may be dispositive of defendant's claim for coverage of his loss. I express no opinion on this point because the record is still undeveloped on that issue.

## ORDER

IT IS ORDERED that plaintiff Markel American Insurance Company's motion for summary judgment is GRANTED with respect to its claim that third-party Murphy Insurance Services, Inc. was not acting as its agent in connection with the purchase and servicing of the insurance policy at issue in this case. FURTHER, IT IS ORDERED that plaintiff's motion to dismiss third-party defendant's cross-claim against plaintiff is

GRANTED.  In all other respects, plaintiff's motion is DENIED.

Entered this 2d day of June, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge

15