IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARKEL  AMERICAN
INSURANCE COMPANY,

                       OPINION AND ORDER

             Plaintiff,

                         09-cv-226-bbc

     v.

FRED BACHMANN,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Fred Bachmann owned a high performance boat, capable of speeds up to 80 mph and vulnerable to flipping on tight turns.  In 2005, he insured it with plaintiff Markel American Insurance Company for an agreed value of $87,000 and he renewed the policy each year through 2008.  In July 2008, when the boat was being driven by someone other than defendant or his wife, it flipped and was effectively destroyed.  Defendant sought coverage for the loss of the boat, but plaintiff refused to pay, citing a"named operator" endorsement to the policy it had issued to defendant, covering the boat only when the boat was being operated by defendant or his wife.

The dispute ended up in this court, with plaintiff seeking declaratory relief that it had

1

no obligation to pay for the loss of the boat and enforcing the arbitration provision in the insurance policy. At the final pretrial conference, it became apparent that trial would not be necessary. The only issue remaining after several rounds of summary judgment motions is whether the policy was one of inland marine or ocean marine. If it is actually an inland marine policy, then the named operator endorsement to the policy would have no effect because plaintiff did not comply with the requirement in Wis. Stat. § 631.20(1) that insurers must submit copies of any form to the insurance commissioner for approval before the form can be used. It is not necessary to resolve any disputed facts in order to decide the proper classification of the policy.

For the purposes of litigation, plaintiff has accepted as true defendant's assertion that he never received a copy of the named operator endorsement.  The parties have stipulated that in 2008, when defendant renewed his policy of insurance on his boat, First Western Insurance was defendant's agent for that purpose, that First Western received a copy of the policy covering defendant's boat for the 2008-09 year and that the policy it received included the named operator endorsement. As explained in the order entered on June 2, 2010, dkt. #132, at 8-11, denying plaintiff's motion for summary judgment, Wisconsin law provides that if an agent of a policy holder has knowledge of the policy's content, that knowledge is imputed to the policy holder.

For the purposes of litigation, plaintiff has accepted as true defendant's unfounded

assertion that he never received a copy of the named operator endorsement.  I characterize this assertion as unfounded in part because it defies credulity to think that in each of the four years that his boat was insured by plaintiff, none of the brokers with the responsibility to send him a copy of the endorsements to his policy did so.  Of more significance is the evidence that defendant took steps to comply with plaintiff's requirements for the named operator endorsement, by submitting drivers' license information about himself and his wife. This makes it more improbable that defendant lacked knowledge of the endorsement.  Finally, defendant has argued that he is entitled to the agreed value of the boat rather than a lesser value, although the only way he would have such an entitlement is if he had asked for and obtained a separate endorsement to his policy.

Now that defendant is unable to argue that he lacked knowledge of the named operator endorsement because of the undisputed facts that his agents had the knowledge and it is imputed to him, he is left with only the defense described above that the policy is one of inland marine and plaintiff did not submit the policy for the insurance commissioner's approval, as required for such policies.  The issue survives only because I resurrected it in the June 2, 2010 order denying plaintiff 's second motion for summary judgment.  Dkt. #132 at 13.  Defendant had argued in his August 10, 2009 brief in opposition to plaintiff's first motion for summary judgment brief, dkt. #49, that because the state insurance commissioner treated plaintiff's high performance policy as one of "inland marine," the policy could not be

3

treated as one of ocean marine that would be exempt from the requirement for approval set out in Wis. Stat. § 631.20(1).  Defendant did not mention the issue in any subsequent filing. In his August brief, he had relied on the February 27, 2009 letter sent by an examiner in the state insurance commissioner to plaintiff's counsel, dkt. #9-2,  to the effect that plaintiff had failed to comply with Wisconsin law by not obtaining the approval of the commissioner before using the endorsements.  Plaintiff argued in its briefing in support of its second motion for summary judgment that defendant had abandoned this argument, but I was uncertain at the time whether this was true.  What I did not know at the time I issued this ruling was that defendant had been sent another letter by the same examiner on July 16, 2009, Aff. of Wunrow, dkt. #138-3, and that in this letter, the examiner said that he had changed his view and no longer believed that plaintiff had failed to comply with Wisconsin law.   According to the letter, the examiner had concluded that § 631.20(1) did not apply to the policy at issue because it was classified properly as ocean marine.

The opinions of examiners working for the state insurance commissioner do not resolve questions of statutory interpretation, but this change in position shed a very different light on the commissioner's characterization of the policy.  If defendant's counsel was aware of his client's receipt of this letter, he did not fulfill his duty of candor by withholding it from the court.  It would have shown why defendant appeared to have abandoned his claim that the policy endorsements were void because they had not been approved in advance by the

4

commissioner.

Despite the change of position by the insurance commissioner, defendant continues to argue that the classification of the policy is still a live question.  Defendant's failure to advise the court that it had new and relevant information from the commissioner of insurance would justify treating the issue as waived, but I will address it for the sake of completeness.

Defendant makes the reasonable point that the legal characterization of the policy is a judicial one and not one assigned to a state regulator, but he advances no reasonable arguments in favor of treating it as anything other than ocean marine.  Throughout these proceedings, he has argued that the policy is not one of ocean marine, but he has cited little law to support his position.  Instead, he has relied primarily on his claim that regardless whether a policy like this one might qualify as ocean marine in some jurisdictions, it would not qualify as one in this state.  As he notes, "ocean marine" policies are meant to deal with the "perils of the sea," which in his view refers to oceans and is not meant to cover any boats other than large commercial "sea-going" vessels.  At the final pretrial conference, his counsel argued that it made no sense to treat policies such as defendant's as ocean marine policies when they are issued for small boats operating on inland waterways far from the ocean.

Defendant's position does not comport with marine insurance law. It is true that when marine insurance was first developed in England, it was designed to provide insurance exclusively for ocean-going vessels, carrying large and expensive cargoes around the world, but

England is a relatively small, ocean-bound country.  The American judiciary abandoned the British view that admiralty jurisdiction reached only to the "high" seas in Insurance Company v. Dunham, 78 U.S. 1, 25-26 (1870).  In Dunham, the court held that admiralty jurisdiction in the United States covers contracts that are maritime in their character and that "maritime" extends "to all the navigable waters of the United States, or bordering on the same, whether landlocked or open, salt or fresh, tide or no tide."  Id. at 25.  Contracts are maritime in their character when they touch upon rights and duties "appertaining to commerce and navigation."  Id. at 29 (citation omitted).

"Inland marine insurance" evolved out of marine insurance, Hunt Construction Group, Inc. v. Allianz Global Risks U.S. Insurance Company, 503 F.3d 632, 633 (7th Cir. 2007). In general, it covers cargo losses, whether occurring on land or moving in inland waterways, as well as to property held by bailees, equipment and property moving from one location to another, property of certain merchandise dealers, such as jewelers and furriers, and "means of transportation and communication."  Russ, Couch on Insurance § 154:3 at 45-3-45-4.  It is distinguished from "ocean marine" or "wet marine insurance.  Ocean marine policies are used to insure maritime vessels, including pleasure boats.  Acadia Insurance Co. v. McNeil, 116 F.3d 599, 601 (1st Cir. 1997).

Defendant cites Progressive Northern Insurance Co. v. Bachmann, 314 F. Supp. 2d 820 (W.D. Wis. 2004), for the proposition that state law controls maritime insurance  policies and

6

requires a holding in this case that state law controls the result.  This argument is not well thought through.  State law *does* control the result in this case.  The state administrative code defines ocean marine insurance as "insurance against the perils of seas and other related perils usually insured against by ocean marine insurance," Wis. Admin. Code Ins. § 6.75(2)(b), and it exempts issuers of such insurance from filing insurance forms as otherwise required under Wis. Stat. § 631.20.  Wis. Admin. Code Ins. § 6.05(2).  What defendant really wants is a ruling that, despite what the state or federal laws provide, his policy is one of inland marine insurance.

        That apparently is why defendant relies on Progressive, in which I said that the relevant policy was not an ocean marine one.  Id. at 827.  Progressive involved the same defendant and, oddly enough, the same boat and the same lake, but it was a different case, brought by a different insurance company.  To the best of my recollection, the plaintiff in that case did not raise the issue of the proper characterization of the policy covering defendant's boat or focus on the significance of the distinction between the two branches of marine insurance.

        The general rule is that "an insurance policy's predominant purpose, as measured by the dimensions of the contingency insured against and the risk assumed, determines the nature of the insurance."  Acadia Insurance Co., 116 F.3d at 603; Liberty Insurance Underwriters, Inc. v. The Weitz Co., LLC, 215 Ariz. 80, 86, 158 P.3d 209, 215 (Ct. App. 2007) (reading builder's risk insurance policy as inland marine insurance policy exempt from requirements of

7

state's standard fire insurance policy; "[a]lthough the label an insurer chooses to place on a policy form is not always dispositive, we note at the outset that the Liberty policy represents itself to be a 'property floater' policy . . . which classifies as 'marine' insurance); Legros v. Great American Insurance Co. of New York, 865 So. 2d 786 (La. Ct. App. 2003) ("Traditional marine insurance, such as hull insurance, is considered ocean marine insurance."); La Reunion Francaise SA v. Barnes, 247 F.3d 1022, 1025 (9th Cir. 2001) (subject matter of contract determines whether it is maritime in character; contract's requirement that policy holder store his boat on land for six months of year does not change essential character of policy, which "relates to a ship in use as such, or to commerce or to navigation on navigable waters, or to transportation by sea, or to maritime employment") (quoting Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 671 (9th Cir. 1997)).  The predominant purpose of the policy that defendant purchased was insurance for his boat.  For an extra premium, he could obtain insurance for bodily injuries and property damage for which he became liable "though ownership, maintenance, or use" of the boat, for a boat trailer used to transport the insured boat and for personal effects on board the boat, cpt., dkt. #1-2 at 7, 9 & 10, but this additional coverage was incidental to the insurance for the vessel itself.

The policy defendant obtained was not one for the property of a merchandiser, for land transportation, for cargo losses, for equipment or property moving from one location to another or for the means of transportation and communication.  It was for damage to the hull

8

of defendant's vessel, which, under the terms of defendant's policy, would be exposed to the perils of the "waters of the Great Lakes and tributaries, including the St. Lawrence River not beyond Quebec and inland waters of the USA."  Dkt. #1-2.

"The term 'ocean marine' is commonly used as an equivalent to 'marine insurance' in modern practice, to explicitly distinguish that form from 'inland marine.'  Although 'ocean marine generally covers losses caused by the 'perils of the sea,' it is ordinarily considered to be insurance associated primarily with risks related to 'vessels' or the 'maritime industry,' so that it extends to exposures in inland waterways, but not to land transportation."  9A Lee R. Russ in consultation with Thomas F. Segalla, Couch on Insurance 3d § 137:1 (3d ed.1998) (citations omitted); see also Acadia Insurance Co., 116 F.3d 599:

> ocean marine insurance is insurance associated primarily with risks related to vessels or the maritime industry and it extends to exposures in inland waterways. See 1 Arthur E. Brunck et al., Ocean Marine Insurance 1-4 (1988); [Kenneth H.] Volk, [Parsing the Admiralty Clause: Jurisdiction of Marine Insurance Transactions, 66 Tul. L.Rev. 257, 274 (1991)].

Whether plaintiff classified its policy as inland marine before 1996 does not affect the nature of the policy.  It is an ocean marine insurance policy, as the Wisconsin Office of the Commissioner of Insurance eventually determined, and as a matter of law.  Defendant wanted insurance to protect against damage to his boat, a vessel designed for use in navigable waterways of the United States.  Insurance of that sort is ocean marine insurance, subject to the restrictions and exemptions applicable to policies of ocean marine.

This case has consumed enough of the resources of the parties and the court.  It is time to bring it to an end.  Originally, plaintiff asked for arbitration.  Now that I have concluded that the policy is properly characterized as one of ocean marine insurance and defendant has stipulated that neither he nor his wife was operating the boat at the time of the accident, it is clear that defendant has no basis on which to claim coverage for his loss under the policy. Therefore, I will enter judgment for plaintiff on its suit for a declaration that it is not required to pay defendant any money for the damage to his boat under the policy at issue, RP2006972.

ORDER

IT IS DECLARED that

(1) The relationship of insurer and insured does not exist between plaintiff Markel American Insurance Company and defendant Fred Bachmann with respect to the incident in which defendant's boat was constructively destroyed on July 24, 2008;

(2) Policy No. RP2006972 does not afford Hull & Machinery coverage to defendant for the incident of July 24, 2008; and

(3) Policy No. RP2006972 excludes Hull & Machinery coverage to defendant for the incident of July 24, 2008, suspends such coverage or both excludes and suspends it.

The clerk of court is directed to enter judgment accordingly.

Entered this 24th day of September, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge